IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2014 OCT 17 PM 1 33
STEPHAN HARRIS, CLERK
CASPER

| | |
|---|---|
| ANNE MARIE GUZZO and BONNIE ROBINSON; IVAN WILLIAMS and CHARLES KILLION; BRIE BARTH and SHELLY MONTGOMERY; CARL OLESON and ROB JOHNSTON; and WYOMING EQUALITY;<br><br>Plaintiffs,<br><br>vs.<br><br>MATTHEW H. MEAD, in his official capacity as the Governor of Wyoming; DEAN FAUSSET, in his official capacity as Director of the Wyoming Department of Administration and Information; DAVE URQUIDEZ, in his official capacity as Administrator of the State of Wyoming Human Resources Division; and DEBRA K. LATHROP, in her official capacity as Laramie County Clerk;<br><br>Defendants. | Case No. 14-CV-200-SWS |

**ORDER GRANTING PRELIMINARY INJUNCTION AND TEMPORARY STAY**

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order. (Doc. 7.) Defendant Debra K. Lathrop filed an affidavit supporting Plaintiffs' motion. (Doc. 7-1.) The remaining defendants ("State Defendants") filed an opposition to the motion. (Doc. 26.) The Court held an evidentiary hearing on the matter on October 16, 2014. Having considered the evidence and testimony presented at the hearing, the parties' briefs, the arguments of counsel, the record herein, and being otherwise fully advised, the Court finds and concludes as follows.

## BACKGROUND

This case asks whether a Wyoming statute limiting marriage to "between a male and a female person" can withstand scrutiny under the due process and equal protection guarantees of the United States Constitution. While few issues are riper for public debate and legislative action than same-sex marriage, as demonstrated by the 11 states that have approved it through state legislation or popular vote since 2009 (*United States v. Windsor*, 133 S. Ct. 2675, 2689 (2013)), a divided three-judge panel of the Tenth Circuit Court of Appeals has "place[d] the matter outside the arena of public debate and legislative action" (*Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). While the Tenth Circuit's decisions in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), and *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014), may be publicly debated, one thing remains undebatable: "[A] district court is bound by decisions made by its circuit court." *Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 1990). Accordingly, the Tenth Circuit's decisions in *Kitchen* and *Bishop* demand a determination in Plaintiffs' favor.

1. **The Parties**

Plaintiffs consist of three groups: (1) same-sex couples who have been denied a marriage license in Wyoming solely because of their same genders, (2) a same-sex couple who was married in Canada but has been unable to have it given legal effect in Wyoming, and (3) a civil rights organization advocating for Wyoming's LGBT community. (Doc. 1 at ¶¶ 25-27.)

State Defendants include (1) the Governor of Wyoming, (2) the Director of the Wyoming Department of Administration and Information, and (3) the Administrator of the State of Wyoming Human Resources Division, all sued in their official capacities. (*Id.* at ¶¶ 28-30.) Defendant Lathrop is the elected county clerk of Laramie County, Wyoming, whose legal duties

include issuing marriage licenses. (*Id.* at ¶ 31.) While she is a named defendant, Defendant Lathrop agrees with Plaintiffs' position and joins their request for relief. (Doc. 7-1.)

2. **Wyoming Statutes at Issue**

Wyoming's statutes define marriage as "a civil contract between a male and a female person to which the consent of the parties capable of contracting is essential." Wyo. Stat. Ann. § 20-1-101 (2013). Plaintiffs assert this statute is unconstitutional under *Kitchen* and *Bishop*.

Also at issue is Wyoming Statute § 20-1-111, which states, "All marriage contracts which are valid by the laws of the country in which contracted are valid in this state." Plaintiffs argue same-sex marriages that are valid under the laws of other states and other countries are not given effect in Wyoming, despite the clear language of this statute.

Plaintiffs' civil rights action for declaratory and injunctive relief, filed under 42 U.S.C. § 1983, seeks to declare § 20-1-101 invalid under the United States Constitution. Plaintiffs allege Wyoming's prohibition on same-sex marriage violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the federal constitution.

Several of the Plaintiffs in this case filed an earlier, similar action in Wyoming state court on March 5, 2014, in *Courage v. State of Wyoming*, Laramie County District Court Docket Number 182-262. In that action, the plaintiffs contend Wyoming Statute § 20-1-101 is unconstitutional because it violates the Wyoming Constitution.

3. ***Kitchen v. Herbert* and *Bishop v. Smith* Summaries**

The parties and the Court agree the Tenth Circuit decisions in *Kitchen* and *Bishop* control the merits of this case. In *Kitchen*, several same-sex couples challenged Utah's state statute and state constitutional amendment that restricted marriage to opposite-sex couples. *Kitchen*, 755 F.3d at 1199-1200. After finding the plaintiffs had standing to sue the defendants, *id.* at 1201-

04, the Tenth Circuit determined the fundamental right to marry includes the right to marry a person of the same sex, *id.* at 1218. Having determined a fundamental liberty was at stake, the Tenth Circuit then examined the challenged state laws under strict scrutiny and found they could not pass constitutional muster. *Id.* at 1218-28. The Court held that "under the Due Process and Equal Protection Clauses of the United States Constitution, those who wish to marry a person of the same sex are entitled to exercise the same fundamental right as is recognized for persons who wish to marry a person of the opposite sex." *Id.* at 1229-30.

Similarly, in *Bishop*, several same-sex couples challenged Oklahoma's state constitutional amendment limiting marriage to opposite-sex couples. *Bishop*, 760 F.3d at 1074-75. The Tenth Circuit found the plaintiffs had sufficient standing to sue, *id.* at 1076-1079, and determined the merits of the appeal were controlled by its decision in *Kitchen*, *id.* at 1079. The Tenth Circuit stated that none of the arguments presented in *Bishop* "persuade us to veer from our core holding that states may not, consistent with the United States Constitution, prohibit same-sex marriages." *Id.* at 1082.

## DISCUSSION

With this backdrop in place, the Court turns to the issues that must be considered in determining whether a preliminary injunction in Plaintiffs' favor is warranted.

1. **Standing**

State Defendants contend Plaintiffs lack standing in this lawsuit, at least as against State Defendants. (Doc. 26 at p. 5.) The Court first examines the issue of standing because it is a component of the Court's jurisdiction. *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009).

The requirements for standing to sue in federal court under Article III of the United States Constitution are well-known:

> To establish Article III standing, a plaintiff must establish (1) that he or she has "suffered an injury in fact;" (2) that the injury is "'fairly traceable to the challenged action of the defendant;'" and, (3) that it is "likely" that "the injury will be redressed by a favorable decision."

*Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011)).

The Court finds the Tenth Circuit's discussion of the plaintiffs' standing in *Kitchen* controls the question of standing in this case. There, the Tenth Circuit first determined the plaintiffs who had been denied marriage licenses had standing to sue the county clerk because Utah county clerks are responsible for issuing marriage licenses. *Kitchen*, 755 F.3d at 1201-02. The same is true in Wyoming, where county clerks are charged by statute with issuing marriage licenses. Wyo. Stat. Ann. 20-1-103(a) (2013). The court also agreed the plaintiffs in *Kitchen* suffered recognizable harm because they were deprived of the many benefits of a recognized marriage, financial and otherwise. *Kitchen*, 755 F.3d at 1201. Those same harms, including financial injury, exist here. (*See* Doc. 41-1 at pp. 2-3; Docs. 7-2 through 7-8 (plaintiffs' affidavits)).

The Tenth Circuit also concluded the plaintiffs had standing to sue the Utah governor due to his supervisory power and authority to compel lawful compliance from county clerks and other officials. *Kitchen*, 755 F.3d at 1203-04. As with Utah, Wyoming's "executive power" is "vested in" the state's governor. Wyo. Const. art. 4, § 1; *Kitchen*, 755 F.3d at 1203 (quoting Utah Const. art. VII, § 5). Additionally, Governor Mead and the other State Defendants have demonstrated a "willingness to exercise" their duty to ensure county clerks, other state officials,

and state agencies enforce Wyoming's prohibition against same-sex marriage.[1] *See* Doc. 41-2 at pp. 2-3; *see also Kitchen*, 755 F.3d at 1203 (quoting *Chamber of Commerce of the U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)).

Finally, an injunction would redress Plaintiffs' harms by prohibiting Defendants (and others) from enforcing Wyoming Statute § 20-1-101 and restricting marriage and benefits to opposite-sex couples. *See Kitchen*, 755 F.3d at 1204. Therefore, "standing issues do not prevent" the Court from considering this case. *See id.*

### 2. Abstention

Defendant Lathrop argued in her response to the motion for preliminary injunction that this Court should stay or abstain in the instant case to allow the state court case to proceed. (Doc. 16 at pp. 3-6.) Defendant Lathrop, however, appears to have abandoned that argument and, at the hearing, requested an immediate ruling from the Court in this case. Nevertheless, in light of the parallel and earlier-filed state case, the Court will consider whether abstention is appropriate.

There are certain federal cases where withholding authorized equitable relief is the correct action because to do otherwise would cause "undue interference with state proceedings." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). Even in cases where abstention is permissible, though, it is "the exception, not the rule." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

---

[1] *See, e.g.*, Laura Hancock, *Mead Says Supreme Court Move Has No Impact on Wyoming's Gay Marriage Case*, Casper Star-Tribune, Oct. 6, 2014, available at http://trib.com/news/stateand-regional/govt-and-politics/mead-says-supreme-court-move-has-no-impact-onwyoming/article_f277c9c6-6d1b-590c-9d8f-1096140242b7.html (last accessed October 17, 2014) (quoting Governor Mead as saying, "The attorney general will continue to defend Wyoming's constitution defining marriage between a man and a woman.").

The Court finds abstention is inappropriate in this case. The arguments advanced in the pending state case are materially different from those advanced here. Specifically, the plaintiffs in the concurrent state case challenge Wyoming Statute § 20-1-101 under the state constitution whereas Plaintiffs here challenge it under the federal constitution. This difference is important because the state court's decision will not necessarily dispose of this federal lawsuit. *See Burns v. Hickenlooper*, 2014 WL 3634834, at *5 n.3 (D. Colo. July 23, 2014) (unpublished) (declining to abstain from deciding and deferring to state court matters of federal constitutional law). Unlike this Court, Wyoming state courts are not bound by decisions of the Tenth Circuit. *Olmstead v. American Granby Co.*, 565 P.2d 108, 113 (Wyo. 1977). Accordingly, it is possible the state court could find § 20-1-101 is valid under the Wyoming Constitution while ignoring *Kitchen* and *Bishop*. Such a decision obviously would not address the federal law issues raised in the instant case. Thus, the state and federal cases are not parallel. *See Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (before examining abstention factors, "a federal court must first determine whether the state and federal proceedings are parallel").

The United States Supreme Court has explained the general duty of a federal court to consider cases over which it has jurisdiction:

> [T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.

*New Orleans Pub. Serv.*, 491 U.S. at 358-59 (1989). The Court finds the instant case does not fit within the abstention exception to the general rule that a federal court should consider cases over which it has jurisdiction. *See Wolf v. Walker*, --- F. Supp. 2d ---, 2014 WL 1207514, at *4, 5

(W.D. Wis. Mar. 24, 2014) (rejecting abstention under similar factual circumstances); *McGee v. Cole*, 993 F. Supp. 2d 639, 646 (S.D.W. Va. Jan. 29, 2014) (same). Indeed, the Supreme Court has affirmed there is no requirement to defer "to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv.*, 491 U.S. at 368. Therefore, the Court will not defer this case in favor of the concurrent state lawsuit.

3. **Preliminary Injunction**

The Court now turns to the merits of Plaintiffs' request for a preliminary injunction, which would prevent Wyoming from limiting marriage to opposite-sex couples under Wyoming Statute § 20-1-101. A preliminary injunction is an extraordinary equitable remedy. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1124 (10th Cir. 2009). For a preliminary injunction to issue, the moving party must establish four elements:

> (1) a substantial likelihood that it will ultimately succeed on the merits of its suit; (2) it is likely to be irreparably injured without an injunction; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest.

*Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (citing *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007)). Beyond merely an extraordinary remedy in this case, though, Plaintiffs request a "disfavored" type of preliminary injunction. The three types of disfavored preliminary injunctions are "those altering the status quo, 'mandatory' preliminary injunctions, and those granting the moving party all the relief it could achieve at trial." *Flood*, 618 F.3d at 1117 n.1. Plaintiffs' requested injunction touches on all three forms of disfavored injunctions because it would alter the status quo, constitutes a

mandatory injunction (*i.e.*, it requires the nonmoving party to undertake affirmative action), and would provide Plaintiffs all the substantive relief they could recover at a full trial on the merits.[2] For a disfavored preliminary injunction to issue, the moving party must satisfy a heightened standard by making a "strong showing of the likelihood of success on the merits and the balance of harms." *Id.* (quoting *Westar Energy*, 552 F.3d at 1224).

### 3.1 Substantial Likelihood of Success on the Merits

Plaintiffs have made a strong showing that they are substantially likely to succeed on the merits of their claim. The Tenth Circuit opinions of *Kitchen* and *Bishop* control this part of the preliminary injunction analysis. Those cases establish a fundamental right to marry a person of the same gender exists, and state laws barring same-sex marriage unconstitutionally infringe upon that right. *Kitchen*, 755 F.3d at 1218, 1229-30; *Bishop*, 760 F.3d at 1079, 1082. The Court therefore concludes Plaintiffs have made a strong showing that they will succeed in establishing Wyoming Statute § 20-1-101 impermissibly violates their rights guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

### 3.2 Likelihood of Irreparable Harm

Next, Plaintiffs have also shown substantial irreparable injury will likely result if a preliminary injunction is not issued. "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)); *see also Awad*, 670 F.3d at 1131 (finding a "violation of constitutional rights" to present a likely irreparable harm). Plaintiffs' asserted harms are irreparable because "the court would be unable to grant an effective monetary

---

[2] Plaintiffs also request attorney fees under 42 U.S.C. § 1988, but that request is a collateral matter having no bearing on the merits of the case.

remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Awad*, 670 F.3d at 1131 (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001)). Plaintiffs' strong showing of a violation of their constitutional rights—including their fundamental liberty to marry a person of the same sex and have their same-sex marriages given legal effect—satisfies the irreparable harm factor.

### 3.3 Balancing of Potential Harms

The third factor in the preliminary injunction analysis requires Plaintiffs to make a strong showing that their threatened injury outweighs any potential injury to Defendants. State Defendants focus their attention on this and the final preliminary injunction factor. (Doc. 26 at pp. 7-10.) State Defendants argue that an abrupt preliminary injunction would cause considerable interference in the administration of "countless agencies and political subdivisions," requiring them to "reform their regulations, policies, and practices to the extent those practices and regulations rely upon Wyoming's statutory definition of marriage." (Doc. 26 at p. 8.) The Court holds many similar concerns about the collateral consequences of a preliminary injunction. However, the fact is State Defendants failed to offer even a scintilla of evidence to support their assertion that a preliminary injunction would cause such administrative nightmares. At the preliminary injunction hearing, State Defendants offered no exhibits and called no witnesses to testify. (*See* Doc. 43.) The record in this case is utterly devoid of anything beyond conjecture or speculation supporting State Defendants' claims that the State will suffer a "severe impact" and a "profound change to the State's and the local authorities' administration of government." (*See* Doc. 26 at p. 9.)

Additionally, the Tenth Circuit has stated the interests of those represented by the government, such as voters, in a law that is likely unconstitutional simply do not outweigh the

protection of a person's constitutional rights. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd* 134 S. Ct. 2751; *see also Awad*, 670 F.3d at 1131-32 (citing *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir. 1997)). Defendants have not established they will suffer any harm, let alone potential harm that outweighs the harm to Plaintiffs' fundamental rights. Plaintiffs have made a strong showing that their threatened injury outweighs any potential injury to Defendants.

### 3.4 Effect on Public Interest

Finally, the issuance of the preliminary injunction would not be adverse to the public interest as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby*, 723 F.3d at 1147 (quoting *Awad v. Ziriax*, 670 F.3d at 1132). There is undoubtedly a public interest in having the will of Wyoming's voters and legislators carried out, but that interest is overridden by the public's interest in protecting fundamental rights. This final preliminary injunction factor also strongly weighs in Plaintiff's favor.

### 3.5 A Preliminary Injunction Shall Issue

In summary, even under the heightened standard, Plaintiffs have shown that all the factors favor a preliminary injunction. Consequently, Plaintiffs' request for preliminary injunction will be granted.

### 4. **Temporary Stay of Preliminary Injunction**

State Defendants' primary argument was that granting a preliminary injunction would deny them the opportunity to fully defend Wyoming's state laws. (Doc. 26 at p. 10.) Rule 62(c) of the Federal Rules of Civil Procedure provides, "While an appeal is pending from an interlocutory order or final judgment that grants ... an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing

party's rights." Fed. R. Civ. P. 62(c). "Rule 62(c) empowers a district court, in its discretion, to modify injunctions during the pendency of an appeal." *Middle Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1231 n.13 (10th Cir. 2002); *see also Rhines v. Weber*, 544 U.S. 269, 276 (2005) (stating district courts "ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion"); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935) (explaining a district court may stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice").

The purpose of a stay is to preserve the status quo pending appeal. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996). The status quo is "the last peaceable uncontested status existing between the parties before the dispute developed." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1006 (10th Cir. 2004) (citing 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948, at 136 n.14 (2d ed. 1995)). Here, the status quo existed before Wyoming Statute § 20-1-101 came under attack by Plaintiffs. Accordingly, the status quo in Wyoming limited marriage to opposite-sex couples.

Exercising its discretion, the Court will order a temporary stay to allow Defendants time to seek relief from the Tenth Circuit. *See Evans v. Utah*, --- F. Supp. 2d ---, 2014 WL 2048343, at *18 (D. Utah May 19, 2014); *Burns v. Hickenlooper*, 2014 WL 3634834, at *5 (D. Colo. July 23, 2014) (unpublished). The Court is sympathetic to the mounting irreparable harms faced by Plaintiffs. However, the many changes that result from this ruling are very serious and deserve as much finality as the Court can guarantee. Given the important and fundamental issues apparent in this case, it is in the litigants' and public's interests to ensure the correct decision is rendered. It would only cause a great deal of harm and heartache if this Court allowed same-sex marriage to proceed immediately, only to have a reviewing court later nullify this decision (and

with it, the same-sex marriages occurring in the interim). The Court understands that every day where same-sex couples are denied their constitutional rights is another day filled with irreparable harm. But it is at least equally important that all same-sex marriages carry the same prominence and finality that attend opposite-sex marriage, including the various obligations and liabilities incumbent within the marital relationship.

Therefore, in its discretion under Fed. R. Civ. P. 62(c) and applicable case law, the Court will temporarily stay the implementation of the preliminary injunction until 5:00 p.m. on Thursday, October 23, 2014, **or** until Defendants file a notice that they will not seek review in the Tenth Circuit, whichever occurs earlier.

## CONCLUSION

This Court is bound to apply and follow Tenth Circuit precedent unless and until it is overruled by the Tenth Circuit *en banc* or superseded by a contrary United States Supreme Court decision. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990); *Thierry v. Gibson*, 194 F.3d 1321 (10th Cir. 1999). The Tenth Circuit's decisions in *Bishop* and *Kitchen* are binding upon this Court and determinative. Plaintiffs have standing to pursue their constitutional claims against these Defendants. Based upon *Kitchen* and *Bishop*, Plaintiffs have shown a strong likelihood of success on the merits. Because the harm in this case involves the violation of a constitutional right, it is irreparable. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Where the moving party has shown a likelihood of success on the merits as to a constitutional violation, the balance of harms generally favors granting preliminary injunctive relief because the public is not harmed by enjoining the enforcement of a likely unconstitutional statute. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012); *Hobby Lobby*, 723 F.3d at 1145. Preventing the violation of a party's constitutional rights is always in the public interest.

*Alvarez*, 670 F.3d at 1132. Where mandatory or injunctive relief would afford the movant all the relief that he or she may be entitled to recover at the conclusion of a full trial on the merits, Plaintiffs are required a make a "strong showing" both with regard to the likelihood of success and balance of harms. *See Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258-59 (10th Cir. 2005). They have done so here and therefore are entitled to preliminary injunctive relief.

"We the people of the United States, in Order to form a more perfect Union, establish Justice, insure domestic tranquility, provide for common defense, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity do ordain and establish this Constitution of the United States." Our Constitution is the shortest and longest surviving written charter of government. Enlightened by their past experiences, its framers wisely separated and balanced governmental powers to safeguard the interests of majority rule and minority rights, of liberty and equality, and of the federal and state governments. It is upon these principles that we live together in this Country as Americans and it is the fabric that we have chosen to weave together, in compromise of our own independent strands of existence—this is our democracy.

As noted by Justice Harlan, "[t]he powers of the federal judiciary will be adequate for the great burdens placed upon them only if they are employed prudently, with recognition of the strengths as well as the hazards that go with our kind of representative government." *Flast v. Cohen*, 392 U.S. 83, 131 (1968).

> The high power has been conferred on this court of passing judgment upon the acts of the state sovereignties, and of the legislative and executive branches of the Federal government, and of determining whether they are beyond the limits of power marked out for them respectively by the Constitution of the United States. This tribunal, therefore, should be the last to overstep the boundaries which limit its own jurisdiction. And while it should always be ready to meet any question confided to it by the Constitution, it is equally its duty not to pass beyond its appropriate sphere of action, and to take care not to involve itself in discussions which properly belong to other forums.

*Taylor v. Beckham*, 178 U.S. 548, 580-81 (1900). This restraint was employed by the United States Supreme Court in declining to recognize and therefore create a fundamental right to assistance in committing suicide:

> By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," *ibid.*, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court, *Moore*, 431 U.S., at 502, 97 S.Ct., at 1937 (plurality opinion).

*Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The preferred forum for addressing the issues presented by Plaintiffs in this case is the arena of public debate and legislative action. However, that ship has sailed. It is not the desire or preference of this Court to, with the stroke of a pen, erase a State's legislative enactments. Nonetheless, the binding precedent of *Kitchen* and *Bishop* mandate this result, and this Court will adhere to its Constitutional duties and abide by the rule of law.

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 7) is hereby **GRANTED**. Defendants are hereby enjoined from enforcing or applying Wyoming Statute § 20-1-101, or any other state law, policy, or practice, as a basis to deny marriage to same-sex couples or to deny recognition of otherwise valid same-sex marriages entered into elsewhere. Marriage licenses may not be denied on the basis that the applicants are a same-sex couple. Additionally, under Fed. R. Civ. P. 65(c), Plaintiffs shall not be required to post security for the preliminary injunction.

**IT IS FURTHER ORDERED** that a temporary stay is hereby **GRANTED**. The preliminary injunction shall be stayed until 5:00 p.m. on Thursday October 23, 2014, **or** until all

Defendants have filed a notice that they will not appeal the preliminary injunction to the Tenth Circuit Court of Appeals, whichever first occurs.

**IT IS FINALLY ORDERED** that, in light of the Court granting the preliminary injunction affording Plaintiffs all of their requested substantive relief, Plaintiffs' request for a temporary restraining order is moot.

**DATED** this 17th day of October, 2014.

Scott W. Skavdahl
United States District Judge